IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

BROMLEY LOCKHART,

      Plaintiff,

v.                                   Case No. 1:06CV83
                                         Judge Keeley

UNITED MINE WORKERS
OF AMERICA 1974 PENSION
PLAN, et al.,

      Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Bromley Lockhart ("Lockhart") worked as a coal miner throughout the 1970s and 1980s and sustained several injuries in the course of his employment. Following the end of Lockhart's working career, he applied for and received Social Security Disability Insurance ("SSDI") benefits as a result of degenerative disc disease, diabetes mellitus and the absence of suitable employment options for someone with his vocational skills. Claiming that his history of mining-related injuries caused his disability, Lockhart then sought a disability pension under the United Mine Workers of America 1974 Pension Plan ("the Plan"). The Defendants, trustees of the Plan ("the Trustees"), denied Lockhart's application, finding that Lockhart's subsequent disability was not related to his mine accident injuries.

In this case, Lockhart asserts that the Trustees abused their discretion under the Plan by denying him a disability pension, in violation of certain provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. Before the Court are the parties' respective motions for summary judgment that have been sufficiently briefed and are ripe for review. For the following reasons, the Court **DENIES** Lockhart's motion, **GRANTS** the Trustees' motion, and **DISMISSES WITH PREJUDICE** Lockhart's complaint.

## I. Factual and Procedural Background

The central issue in this case concerns the Trustees' review of the causal relationship that existed between Lockhart's mine accident injuries and his subsequent disability. Accordingly, a detailed account of those injuries and the related medical evaluations is necessary to properly frame the issue.

The first of Lockhart's relevant mine accident injuries occurred on September 6, 1974, when he slipped while cleaning a "hydraulic take-up," twisting his right foot and leg ("the 1974 injury"). (Administrative Record ("AR") 357). As a result of that injury, Lockhart "eventually saw an orthopedist specialist" (AR 347), and was granted temporary total disability benefits by Ohio's Bureau of Workmen's Compensation ("the Bureau"). (AR 349). On

June 18, 1976, Lockhart hurt his back while shoveling rocks and missed another four months of work ("the 1976 injury"). (AR 346-47). The Bureau considered the 1976 injury to be a reoccurrence of the 1974 injury. (AR 372). On August 22, 1977, Lockhart injured his head, neck, back, arms and legs during a "portabus" accident ("the 1977 injury"). (AR 331). The doctor who examined Lockhart following the 1977 injury, Dr. Edgar Barrett, found that Lockhart's cervical spine was normal (AR 332), but that the injury reaggravated his "underlying cervical and lumbar disc problem." (AR 337). Moreover, a cervical x-ray revealed "no gross fracture or abnormality." (AR 331). As a result of the 1977 injury, the Bureau paid Lockhart benefits from October 17, 1977 to November 20, 1977. (AR 342).

On January 26, 1978, pursuant to his employer's request for an evaluation of the 1977 injury, Lockhart was examined by Dr. Anthony Twite who found that Lockhart was a "healthy-looking male in no distress . . . [with] no obvious deformity," and that any restriction on the range of motion of Lockhart's spine "appears to be voluntary," suggesting "that he was faking" some of his tests. (AR 345-47). Dr. Twite concluded that

> "[Lockhart] has nothing seriously wrong with him. His right ankle [injured in the 1974 injury] is entirely normal. I could detect no objective abnormal finding in either cervical or lumboscral spine area [sic]. Patient

> gave me the impression that he was some-what over-anxious person [sic] . . . . I feel that the patient has been over-treated for his symptoms and his minor injuries. It is my impression that he has no permanent disability and that he is fit to return to work."

(AR 345). Based on Dr. Twite's findings, Lockhart's employer requested that the Bureau find that Lockhart was no longer disabled and that he could return to work (AR 411), and Lockhart's own physician, Dr. Barrett, agreed that Lockhart was fit to return to work. (AR 327).

On May 7, 1979, the Bureau allowed Lockhart's claim for compensation as a result of the 1974 injury for "probable disc protrusion with associated sciatica." (AR 367). In 1981, Lockhart was apparently involved in an accident involving falling rocks ("the 1981 injury") (AR 487), and on May 19, 1984, Lockhart was injured when the buggy in which he was riding went off its track ("the 1984 injury"). (AR 506). The examining physician, Dr. Leslie Borbely, found that the 1984 injury aggravated "pre-existing cervical and lumbar str[ain]." (AR 530).

On August 8, 1984, another physician, Dr. Timothy Fallon, examined Lockhart and found that Lockhart manifested only "subjective complaints" without "anything that would suggest a discogenic or radicular component to his symptoms," but decided nevertheless that Lockhart suffered from a permanent partial

impairment of 10% for the 1981 injury and additional 10% for the 1984 injury.  (AR 487-88).

Thereafter, Lockhart's employer refused his claim for worker's compensation benefits for the 1984 injury.  (AR 484).  Dr. Borbely, however, wrote to the Bureau on Lockhart's behalf, (AR 532), and Lockhart's claim based on his 1984 injury was allowed.  (AR 479).

On April 8, 1985, Lockhart was examined by neurologist Dr. Hossein Sakhai, who found that Lockhart had "satisfactory range of motion in the cervical spine . . . [and the] lumbosacral area." (AR 458).  On November 12, 1985, however, Lockhart was examined by Dr. Richard Laubaugh, who diagnosed Lockhart as suffering from a right ankle sprain and lumbosacral strain, and recommended a 15% permanent partial disability.  (AR 444).  On August 25, 1986, the Bureau awarded Lockhart a permanent partial disability of 7% as a result of the 1974 injury.  (AR 385).  On August 3, 1987, Lockhart was again hit by falling rocks, causing soft tissue contusions to his rib cage and kidney, contusions and abrasions to his lower back and dorsal spine, and cervical sprain ("the 1987 injury").  (AR 276).  Lockhart apparently missed approximately seventeen months of work as a result of the 1987 injury.  (AR 209).  On October 3, 1988, Lockhart was evaluated by Dr. John Vetter who found that while there was "no evidence of nerve root compromise," Lockhart

was nonetheless 100% temporarily and totally impaired and that he should refrain from working for the time being.  (AR 709-10). Lockhart then received worker's compensation from August 1987 until January 1989, when he returned to work.  (AR 209, 213-14). Lockhart worked until October, 1989, (AR 209), when he was incarcerated for matters unrelated to this case.  (AR 848).[1]

As both parties note, the details of Lockhart's medical treatment while in prison are difficult to discern from the prison records.  However, it is clear that Lockhart was seen by prison medical personnel on numerous occasions for neck and back pain. (AR 74, 75, 103, 105 and 108).  An x-ray of Lockhart's spine taken on January 27, 1995, showed "some minimal degenerative spurs in the lower lumbar region," and an April 4, 1995 x-ray suggested cervical spondylosis.  (AR 15-16).  Throughout his incarceration, Lockhart was treated for problems relating to his diabetes (<u>see</u> <u>e.g.</u> AR 1015), and he was eventually hospitalized from April 24, 2002 until May 16, 2002 due to shortness of breath.  (AR 892).  The hospital records indicate a history of diabetes, hypertension, hyperlipidemia, positive PPD and negative cultures for

---

[1]  The record is not entirely clear on this point.  While one document suggests that Lockhart's last day of work was October 12, 1989 (AR 209), another document suggests that Lockhart was incarcerated as early as April 19, 1989.  (AR 848).

tuberculosis, COPD, anxiety and pneumoconiosis secondary to coal dust exposure.  <u>Id.</u>

On May 22, 2002, after his hospitalization and after being released from prison, Lockhart applied for SSDI benefits.  (AR 859-62).  As part of his application, Lockhart was examined by Dr. Gabriel Sella who found "no neurological or myofascial evidence" of any neck or back pain, finding, rather, that Lockhart was "quite obese and deconditioned."  (AR 822).  Dr Sella concluded that Lockhart had degenerative cervical disc disease, but that he could still do work related activities such as sitting, handling objects, hearing, speaking and traveling.  (AR 823-24).

Lockhart's SSDI application was initially denied, but on February 25, 2003, an Administrative Law Judge ("ALJ") reversed that decision, and found that Lockhart was disabled.  (AR 222).  The ALJ found that, although Lockhart's relevant medical conditions – degenerative disc disease and diabetes – were not severe enough to qualify him for disability by themselves, his lack of residual capacity to work coupled with the insufficient number of jobs available to him, rendered Lockhart disabled within the meaning of the Social Security Act.  <u>Id.</u>  Accordingly, the ALJ granted disability benefits effective from May 22, 2002.  <u>Id.</u>

Subsequent to the ALJ's determination of his disability, Lockhart applied for a disability pension from the Plan, and was initially denied by the Trustees on February 1, 2005.  (AR 204-08).[2]  The Trustees concluded that neither Lockhart's degenerative disc disease, nor his diabetes, was caused by a mining accident. (AR 204).

Subsequently, Lockhart asked the Trustees to reconsider their decision, and, in support, provided a supplemental letter from his doctor, G. P. Naum, who wrote that Lockhart's "total disability is as a result of his cervical injuries."  (AR 197).  On April 4, 2005, after considering all recently submitted evidence, including the letter from Dr. Naum, the Trustees again denied Lockhart's request for a disability pension on the ground that his disability was not caused by a mining accident.  (AR 189).  Lockhart then applied for the disability pension a third time, supplementing his submission with a letter from Dr. Lisa Hill stating that his cervical pain was "secondary to several significant coal mining accidents in the past and also from multiple comorbid conditions."

---

[2]  Lockhart applied for a retirement pension from the Trustees on February 8, 2001 (AR 281), and was granted a deferred vested pension with an effective date of April 1, 2001.  (AR 296).  The exact date on which Lockhart applied for his disability pension – the pension which is the subject of dispute here –  is not clear from the record.  It is clear, however, that he had applied for the disability pension by April 24, 2003.  (AR 268).

(AR 187).  On July 8, 2005, the Trustees again denied Lockhart's request for a disability pension.  (AR 178).

Thereafter, on May 23, 2006, Lockhart brought the instant action on grounds that the Trustee's decision to deny him a disability pension was "arbitrary, illegal, capricious, unreasonable, discriminatory and not made in good faith," violating ERISA provisions 29 U.S.C. §§ 1024(b)(4), 1132(a)(1)(A), 1132(a)(1)(B), 1132(c)(1)(B) and 1132(g).  The Trustees answered on June 14, 2006, and both Lockhart and the Trustees filed timely motions for summary judgment.

## II.  Standard of Review

### a.  Summary Judgment

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  To withstand such a motion, the nonmoving party must present evidence from which "a fair-minded jury" could return a

favorable verdict.  See <u>id.</u>, 477 U.S. at 252.  However, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient . . . ."  <u>Id.</u>

**b.  ERISA Review**

"When an ERISA disability pension plan commits eligibility determinations to the discretion of the plan administrator or fiduciary, [courts] review those determinations for abuse of discretion."  <u>McCoy v. Holland</u>, 364 F.3d 166, 169-70 (4th Cir. 2004) (citing <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989)).  Under the abuse of discretion standard, the Court will not disturb the Trustees' determinations if they are reasonable.  <u>Booth v. Wal-Mart Stores, Inc. Assoc. Health and Welfare Plan</u>, 201 F.3d 335, 342 (4th Cir. 2000).  "Although [courts] may consider many factors in determining the reasonableness of a fiduciary's discretionary decision . . . the only factor at issue [in cases in which the Trustees review the causal link between the work injuries and the disability] is the degree to which the considered materials support the Trustees' decision . . . .  In other words . . . the Trustees' decision is reasonable if it is supported by substantial evidence . . . ."  <u>McCoy</u>, 364 F.3d at 170 (citations omitted).  The Fourth Circuit has defined "substantial evidence" as "evidence which a reasoning mind

would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).  Finally, "[i]f the medical evidence is unclear, the [1974 UMWA Pension] Plan grants the Trustees, not the court, the discretion to resolve any conflicts and draw reasonable inferences from the record." McCoy, 364 F.3d at 171-72.

### III.  Analysis

"The award of benefits under any ERISA plan is governed in the first instance by the language of the plan itself." Lockhart v. United Mine Works of America 1974 Pension Trust, 5 F.3d 74, 78 (4th Cir. 1993).  Established pursuant to the National Bituminous Coal Wage Agreement ("NBCWA") of 1974,[3] the Plan provides that any eligible employee who

> (a) has at least 10 years of signatory service prior to retirement, and (b) becomes totally disabled as a result of a mine accident . . . shall, upon retirement . . . be eligible for a pension while so disabled.  A participant shall be considered to be totally disabled only if by reason of such accident such Participant is subsequently

---

[3] See Yates v. UMWA 1974 Pension Plan, 471 F.3d 514, 515-16 (4th Cir. 2006) ("The UMWA 1974 Pension Plan . . . was established pursuant to the 1974 NBCWA, the central collective bargaining agreement between coal operators and the UMWA.  The Plan, which is a continuation of the benefits program established under the UMWA Welfare and Retirement Fund of 1950, is funded by contributions from employer-signatories to an NBCWA or any other agreement requiring pension contributions.").

> determined to be eligible for Social Security Disability
> Insurance [SSDI] Benefits . . . .

(Doc. No. 31, exhibit B, pt. 1 at 13).  In analyzing this precise

language, the Fourth Circuit has held that "to qualify for a

disability pension under the 1974 Plan [the claimant must]

establish (1) that he was involved in a mine accident, (2) that he

has been awarded SSDI benefits, and (3) that he was disabled 'as a

result of' a mine accident."  Buzzard v. Holland, 367 F.3d 263,

267-68 (4th Cir. 2004).  The parties do not dispute that Lockhart

meets the service eligibility requirements under the Plan or that

he was awarded SSDI benefits and is thus considered totally

disabled.[4]  The only issue that the parties dispute is whether

Lockhart was disabled as a result of a mine accident.

In order to help interpret the Plan's language, the Trustees

have created a set of documents known as "Q & As."  These Q & As

are given the same deference that the Court gives to the Trustees'

interpretation of the Plan itself.  McCoy, 364 F.3d at 170.  At

issue in this case is Q & A 252, which requires that, to qualify

for a disability pension, an applicant's disability must

> be traceable to a definite time, place, and occasion
> which occurred within the course of the mine worker's
> employment.  A progressive disease does not meet this

---

[4] The record discloses that Lockhart worked as a coal miner for Quatro
Mining Company from June 7, 1973  until  October 12, 1989.  (AR 281).

> test and therefore cannot be a disability that resulted
> from a mine accident. . . . [M]iners who become disabled
> by progressive diseases or conditions such as black lung,
> silicosis, tuberculosis, arthritis, rheumatism, etc.,
> cannot be considered 'disabled as the result of a mine
> accident' under the test stated above."

(Doc. No. 31, Exhibit C at 2). However, "if the plaintiff was injured in a mine accident and that injury, whether in combination with a previous or subsequent condition, is substantially responsible for plaintiff's inability to perform his job and for whatever medical and vocational reasons he is unable to perform an alternative job, then his total disability results from a mine accident." Robertson v. Connors, 848 F.2d 472, 475 (4th Cir. 1998).

Accordingly, Lockhart's eligibility for a disability pension under the Plan depends on whether his mine injuries combined with degenerative disc disease to substantially cause his disability. Therefore, under the applicable standard of review, the Court must consider whether substantial evidence supported the Trustees' determination that Lockhart's mine accident injuries were not substantially responsible for his subsequent disability.[5] The Court finds that the Trustees' determination is supported by substantial evidence.

---

[5] Although the ALJ found that Lockhart suffered from two qualifying impairments, degenerative disc disease and diabetes mellitus, Lockhart does not argue that his diabetes is relevant to his ERISA challenge.

During the course of the administrative proceedings, the
Trustees conducted three separate reviews of Lockhart's claims and
medical records, (AR 178-86, 189-96 and 204-08), each review taking
into consideration the most current relevant material available at
the time.  The Trustees have repeatedly denied any causal link
between Lockhart's mine accident injuries and his subsequent
disability, relying on reports from several of Lockhart's treating
physicians, the lack of contemporaneous documentation of Lockhart's
injuries, and the date of disability determined by the ALJ.

Specifically, the Trustees point to Dr. Twite's examination in
January 1978, finding nothing objectively wrong with Lockhart's
spine; Dr. Barrett's examination in March 1978, finding that
Lockhart was fit to return to work; Dr. Fallon's examination in
August 1984, finding no objective manifestations of injury; and,
Dr. Sakhai's examination in April 1985, finding no objective
neurological signs.  The Trustees also rely on x-rays taken in 1995
showing degenerative changes in Lockhart's spine suggestive of
spondylosis.  The Trustees note, however, that spondylosis may
result in compressed nerve roots, but that Dr. Vetter's August 1987
examination showed no signs of nerve root compromise despite the
several accidents that Lockhart had suffered by that point. (AR
185-86).  These examinations, the Trustees argue, establish that

14

Lockhart's eventual disability was not substantially the result of his mine accident injuries.

The Trustees additionally argue that, for several of Lockhart's injuries – the 1974 injury, the 1976 injury, the 1981 injury and the 1987 injury – there is not enough contemporaneous medical documentation to support Lockhart's claims that those injuries causally contributed to his later disability.[6]  Although two of Lockhart's doctors, Dr. Hill and Dr. Naum, wrote to the Trustees claiming that Lockhart's disability was caused, at least in part, by his earlier mine related accidents, the Trustees discounted those letters noting that there was no record of any care actually provided by Dr. Naum and that Dr. Hill did not examine Lockhart until November, 2002, more than a decade after his last employment as a miner.  As mentioned *supra*, the Fourth Circuit gives the Trustees the "discretion to resolve any conflicts and draw reasonable inferences from the record." <u>McCoy</u>, 364 F.3d at 171-72 (citation omitted).  In light of the substantial evidence justifying the Trustees' determinations and their clear discretion to make such determinations, the Court finds that the Trustees

---

[6] With regard to the 1974 injury, the record discloses that Lockhart "eventually saw an orthopedist specialist" (AR 347).  For the 1976 injury, the record discloses that following the accident Lockhart "was given some pain pills and told that there was nothing seriously the matter" and, was again "eventually referred to an orthopedist specialist . . . ."  (AR 346-47).

adequately considered the letters of doctors Hill and Naum along with the other supporting documentation in the record.

The Trustees also relied upon the ALJ's determination that Lockhart became disabled on the relatively recent date of May 22, 2002. (AR 221-22). The Fourth Circuit gives "great weight to the date of disability set by the Social Security Administration in miners' disability cases." Richards v. United Mine Workers of America Health and Retirement Fund, 895 F.2d 133, 138 (4th Cir. 1990); Horn v. Mullins, 650 F.2d 35, 37 (4th Cir.1981) (date set by Social Security Administration was critical factor in determining cause of disability).[7] The ALJ's determination of disability came over twelve years after Lockhart's last day of work (AR 209, 222), and was based as much on the lack of suitable employment options for someone with Lockhart's limited vocational skills as it was on the disabling effects of his degenerative disc disease. (AR 222).[8]

Moreover, to the extent that the ALJ discussed Lockhart's medical conditions when evaluating his application for SSDI benefits, she referred only to recent examinations of Lockhart that

---

[7] The Fourth Circuit has held that an ALJ's findings are not entitled to as much weight when they are factually inaccurate. Brogan v. Holland, 105 F.3d 158, 161 n. 2 (4th Cir. 1997). In the present case, however, none of the parties have disputed the factual findings of the ALJ, and those findings are not otherwise contradicted by the record.

[8] Specifically, the ALJ found that "[b]ased upon the claimant's residual functional capacity and vocational factors, there are no jobs existing in significant numbers that he can perform." (AR 222).

16

revealed chronic, degenerative ailments; she did not refer to any previous work injuries.  (AR 221-22).  Accordingly, both the date of and reasoning behind the ALJ's finding of disability further supports the Trustee's determination that the mine accident injuries were not substantially responsible for Lockhart's subsequent disability.

In addition to the arguments from the administrative record, both parties cite Fourth Circuit case law in support of their respective positions.  Lockhart relies on <u>Harris v. Holland</u>, 87 Fed. Appx. 851 (4th Cir. 2004), an unpublished decision holding that the Trustees abused their discretion in denying a disability pension to a claimant mine employee with a history of work-related injuries and degenerative disc disease.   The <u>Harris</u> claimant's actual disability, however, was not degenerative disc disease, but rather "residuals of lower back injury with radiculopathy in the lower extremities, arthritis in the neck, arms, and hands; and situational depression."  <u>Id.</u> at 854.   The <u>Harris</u> court found dispositive the fact that the Trustees gave "no consideration whatsoever to [the claimant's doctor's] opinion." <u>Harris</u>, 87 Fed. Appx. at 859.  Indeed, the Court held that "[b]ecause the Trustees ignored [his] opinion, they failed to properly analyze the proximate cause issue." <u>Id.</u>  Finally, the claimant's degenerative

17

disc disease was diagnosed during the course of his mine employment, and prior to some of his documented mine accident injuries. Id. at 853.

Harris is distinguishable from the instant case on several grounds. Here the Trustees clearly analyzed Lockhart's doctors' opinions, (AR 186, 195), but found, in their discretion, that those opinions were not medically compelling. Moreover, Lockhart's disability, unlike that of the claimant in Harris, is in fact based on degenerative disc disease, a disease that was not diagnosed until more than five years after his last work accident.

The Trustees, by contrast, rely on McCoy, a case with a relevant factual progression similar to that presented in this case. McCoy's neck was injured by falling rocks in 1993, but he received little contemporaneous medical treatment. McCoy, 364 F.3d at 167. McCoy was laid off in 1994, and did not seek any medical treatment related to his neck injury until 1995. Id. Thereafter, an ALJ found that McCoy had become disabled in 1995, partly as a result of degenerative disc disease. Id. at 171. In 1996, McCoy sought a disability pension under the same Plan at issue here, claiming that his degenerative disc disease was causally linked to his 1993 injury. Id. at 169. The trustees denied McCoy's disability pension on the same grounds on which the Trustees in the

present case denied Lockhart's: lack of a causal connection between the work injury and the disability.  Id.

Subsequently, McCoy brought an ERISA claim and the district court overruled the trustees, finding that "it [is] only logical that when a person is hit on the head, that parts of the body, like the spine . . . would also suffer trauma from such an injury."  Id. at 170.  On appeal, the Fourth Circuit reversed the district court, and criticized the district court judge for substituting his medical judgment for that of the Trustees'.  Id. at 171-72.  The appellate court found it noteworthy that "[t]he Trustees have decided that degenerative disc disease is a 'part of the normal aging process and that it is a progressive disease.'"  Id. at 172 (internal punctuation altered).  The court further held that

> a mine worker whose SSDI award states that he is disabled as a result of degenerative disc disease must prove to the Trustees that a mine accident combined with or exacerbated his disc disease to proximately cause his disability . . . .  [A]ll of the diseases commonly referred to as "degenerative disc disease" are progressive conditions that develop slowly with advancing age . . . .  Because, in both technical and general usage, the term "degenerative disc disease" denotes progressive conditions, the Trustees' determination that degenerative disc disease is a "progressive disease" within the meaning of Q & A 252 is a reasonable one. . . . We further note that McCoy has offered no evidence suggesting that "degenerative disc disease" is anything other than [a] progressive condition[. . . .]  Without such evidence, we have no reason to doubt the Trustees' reasonable interpretation of the progressive disease exclusion in Q & A 252."

19

_Id._ (citations omitted).

In this circuit, therefore, the Trustees' discretion places a significant burden on disability claimants to prove that past accidents contributed to findings of total disability based on degenerative disc disease.  Early evaluations of Lockhart – those conducted during his working years – show no evidence of degenerative disc disease, and the ALJ found that his disease did not become a disability until 2002, more than a decade after he suffered his last mine accident.  Therefore, it was reasonable for the Trustees to conclude that his mine accidents did not substantially contribute to his degenerative disc disease disability.

### IV.  Conclusion

For the foregoing reasons, the Court holds that a reasonable jury could find that the Trustees did not abuse their discretion in denying Lockhart's application for a disability pension under the Plan.  Accordingly, Lockhart's motion for summary judgment (Doc. No. 33) is **DENIED**.  Moreover, the court finds that the Trustees' determination was supported by substantial evidence and that no reasonable jury could find that the Trustees abused their discretion.  Accordingly, the Trustees' motion for summary judgment

(Doc. No. 31) is **GRANTED**, and Lockhart's complaint (Doc. No. 1) is

**DISMISSED WITH PREJUDICE.**

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to

counsel of record.

Dated:  April 30, 2007

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE